UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NUMBER: 12-20272
                                     HONORABLE VICTORIA A. ROBERTS

v.

D-1 SACHIN SHARMA,

        Defendant.
_____/

## ORDER REGARDING GOVERNMENT'S REQUEST FOR A *NEBBIA* HEARING

**I. INTRODUCTION**

This matter is before the Court on the Government's request for a hearing pursuant to *United States v. Nebbia*, 357 F.2d 303 (2d Cir. 1966) (*"Nebbia* hearing") to determine the source of the money and property proposed to secure Defendant Sachin Sharma's release from jail on bond pending trial. (*See* Docs. 42, 44, 45, 53).

On the terms set in this Order, the Court **GRANTS** the hearing.

**II. BACKGROUND**

Defendant is charged in a seven-count indictment with conspiracy to commit health care fraud, health care fraud, and conspiracy to pay and receive health care kickbacks. (Doc. # 3).

On May 2, 2012, Magistrate Judge Mark A. Randon ordered Defendant detained pending trial. (Doc. # 14). After conducting a detention hearing under the Bail Reform Act of 1984, 18 U.S.C. § 3142(f), the Magistrate Judge concluded that the Government

1

established by a preponderance of the evidence that there was a serious risk Defendant would not appear at trial if released on bond, and he ordered Defendant detained. (*Id.* at 2). The Magistrate Judge said, "Defendant appears to have misrepresented his income to pre-trial services. The Government says he has sent 1.9 million dollars to India. Defendant is an Indian citizen with limited ties to the community." (*Id.*).

On May 8, 2012, Defendant moved for revocation of the detention order. (Doc. # 26). The Court held a hearing on May 15, 2012. At the hearing the Court indicated it believed it could set bond conditions that would reasonably assure that Defendant would not flee the jurisdiction; pre-trial services made that recommendation as well. The Court asked defense counsel to explore the possibility of using Defendant's property holdings in India as collateral, subject to potential forfeiture, to assure his appearance. (3/15/12 Tr. 26). The Court then set the following conditions:

> Mr. Sharma will be placed on a tether that does have electronic monitoring. The Court will have [him] enter into [an] agreement [to] forfeit his interest in the St. Clair property if he does flee. He will enter into an agreement or [Naveen] Sharma will enter into an agreement and his wife if she's a joint owner that would forfeit their property in New Jersey if Mr. Sharma flees. Mr. Sharma will waive extradition[.] [I]n connection with the appointment of this trustee in India[,] [t]he Court needs Mr. Sharma to provide it with a list of all his real estate holdings in India whether they are a lease or under an offer. The Court also wants a complete list of Mr. Sharma's relatives and their addresses in India. We are also going to provide notice to the Indian Consulate which is in Chicago which has jurisdiction over Michigan that Mr. Sharma is a defendant in this case, that he has waived extradition and that if he seeks any assistance through the Indian Consulate this jurisdiction is to be notified. He is surrendering his passport and the Court sets a $200,000 cash bond. Those are the conditions.

(*Id.* at 26-27).

The Government requested that the Court find, at a *Nebbia* hearing, that the

collateral used as security for Sharma's release is not the fruit of the crimes for which he is charged. (*Id.* at 29). The Government said it has "substantial evidence" that the property pledged was secured through the use of illegitimate funds. (*Id.*). Defense counsel expressed his belief that Sharma's and Naveen's agreements to forfeit real property were not subject to a *Nebbia* inquiry, which he said applies only to surety bonds. (*Id.* at 30-31). He said that if the Government requests such a hearing with respect to the corporate surety bond, the Court could, in its discretion, conduct the hearing. (*Id.* at 31).

The Government argued that defense counsel's interpretation of the *Nebbia* line of cases was too narrow; it said *Nebbia* hearings are not limited to situations in which there is a surety bond. (*Id.* at 32). It said:

> The only thing that we ask is that Mr. Sharma and he can do this through third parties or he can do this through–if he has other legitimate business. All we're saying is just demonstrate it. It's your obligation to demonstrate that the money you're pledging to the Court that is an assurance that you will show up is actually–not a fruit of the crime because otherwise it's a hollow enforcement mechanism to say give us the money that you stole back in order to insure that you're not going to flee.

(*Id.* at 32-33).

Defense counsel admitted that the properties in both India and Saint Clair Shores were purchased with the money Defendant and his wife earned through the businesses that are the subject of the indictment. (*Id.* at 33). He said, "Mr. Sharma could never justify these properties short of having a trial of the case right now." (*Id.*). Since that time, defense counsel determined that it is impossible to devise a way for Sharma to pledge his real estate interests in India as collateral for his release. (Doc. # 53).

The Court asked for, and received, briefing on the question of whether it was

3

required to hold a *Nebbia* hearing, and the nature of such hearing, prior to releasing Defendant on bond. (*Id.* at 34).

## III. ANALYSIS

### A. A *Nebbia* hearing is mandatory under the Bail Reform Act of 1984

The Bail Reform Act of 1984 says:

> In considering the conditions of release described in subsection (c)(1)(B)(xi) [agreement to forfeit property] or (c)(1)(B)(xii) [surety bond] of this section, the judicial officer may upon his own motion, *or shall upon the motion of the Government*, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g)(4) (1984) (emphasis added). This provision codifies the *Nebbia* inquiry authorized by the Second Circuit nearly two decades earlier. *See* S. Rep. No. 98-225, at 24 (1983). Congress was concerned that "because of a lack of clear statutory authority to conduct [*Nebbia*] hearings, particularly with respect to corporate sureties, many courts have refused government requests for any inquiry into the source of property used to post bond." *Id.* "Therefore, the Committee has, in subsection (g), provided for this statutory authority so that judicial officers may make informed decisions as to whether financial conditions of release will be sufficient to assure appearance of defendants." *Id.*

Notably, the Court *must* hold a hearing under this provision when requested by the Government. Thus, there is no dispute that Sharma is subject to a *Nebbia* hearing. Defendant concedes this in his briefs. (See Docs. 42 and 53). However, the Court must determine the hearing procedure, which is not addressed either in the statute or in

4

its legislative history. In addition, the Court must address Defendant's contention that he should not be required to make a *Nebbia*-type showing for his real estate in Saint Clair Shores and should still be able to use that property as collateral for his pre-trial release.

>    B.    **The court will conduct an *in camera* hearing, on the record, without the presence of the prosecution**.

The Court finds that to protect Defendant against the risk of self-incrimination, the hearing will be *in camera* and *ex parte*. Though it will be on the record, the courtroom will be closed to the public and the record made will be sealed. *See, e.g.*, *United States v. Kaila*, No. CR-08-2021-LRS, 2008 WL 1767728, at *1 (E.D. Wash. Apr. 15, 2008) (*Nebbia* hearing held in a closed courtroom, on the record, and outside the presence of the Assistant United States Attorney and its agents); *United States v. Ellis DeMarchena*, 330 F. Supp. 1223, 1227 (S.D. Cal. 1971) (stating that if the defendant wished to present evidence in an attempt to persuade the court that the potential loss of the money used to secure a surety bond was sufficient to ensure defendant would make future court appearances, the court would hold a "closed in camera examination" into the source of the collateral, the record would be sealed, and the court "would take every precaution to assure that any evidence offered by the defendant would not be used against him at the trial").

The Court will hear evidence from Defendant regarding the source of the money used to purchase his brother's New Jersey property, and of the collateral and premium for the corporate surety bond. Defendant is required to make a *prima facie* showing that these sources are legitimate and not the fruit of anything alleged in the indictment. *See*

*Kaila*, 2008 WL 1767728, at *1 ("The Court finds that the Defendant has established on a *prima facie* basis that the source of the funds used to post the cash portion of the percentage bond was likely a result of the Defendant's work efforts, business borrowing and/or investment acumen."). However, as explained in the next section, the Court will not hear evidence regarding Sharma's Saint Clair Shores real estate, will not accept an agreement to forfeit that property as a release condition, and raises the amount of his bond from $200,000 to $400,000.

> **C. The Court will not accept the Saint Clair Shores real estate as security for pre-trial release because Sharma admits that property was funded by the businesses at the center of the indictment and that he is not prepared to demonstrate the legitimacy of those businesses at this time.**

Defendant argues that he should be able to execute an agreement to forfeit his Saint Clair Shores Property as a condition of release despite the fact that he is not prepared to make a *prima facie* showing that the source of the funding for this real estate was lawful.

The Court agrees with Sharma that there is no iron-clad rule that a defendant must show that collateral to support pre-trial release was lawfully acquired (*see* Doc. 45 at 2-3); rather, the statute simply directs the Court to decline to accept the use of collateral that because of its source will not reasonably assure the appearance of the person as required. 18 U.S.C. § 3142(g)(4). The statute itself does not mention proceeds of a crime. There may be some circumstances in which a court could find that collateral potentially funded by criminal activity will nonetheless reasonably assure the appearance of the defendant. Senate Report 225 even says the source of property

used to fulfill a condition of release is only *one consideration* (albeit an important one) in a court's determination of whether such condition will assure the defendant's appearance. S. Rep. No. 98-225, at 24.

However, the legislative history of the Act makes clear that Congress believed, in most cases, the potential loss of the fruits of an alleged crime will not reasonably assure the appearance of the defendant at trial:

> Subsection (g) also contains a new provision designed to address a problem that has arisen in using financial conditions of release to assure appearance. The rationale for the use of financial conditions of release is that the prospect of forfeiture of the amount of a bond or of property used as collateral to secure release is sufficient to deter flight. However, when the proceeds of crime are used to post bond, this rationale no longer holds true. In recent years, there has been an increasing incidence of defendants, particularly those engaged in highly lucrative criminal activities such as drug trafficking, who are able to make extraordinarily high money bonds, posting bail and then fleeing the country. Among such defendants, forfeiture of bond is simply a cost of doing business, and it appears that there is a growing practice of reserving a portion of crime income to cover this cost of avoiding prosecution. The source of property used to fulfill a condition of release is thus an important consideration in a judicial officer's determination of whether such a condition will assure the appearance of the defendant.

*Id.* at 23-24.

Senate Report 225 expressly states that the purpose of subsection (g)(4) is to address the risk that defendants will not be adequately deterred from fleeing after posting bond *when that bond comes from the proceeds of a crime*. This substantially undermines Defendant's contention that he should be permitted to pledge his Saint Clair Shores real estate as one condition of release. Absent exceptional circumstances, bail funded in part from alleged criminal activity does not adequately assure the appearance of the defendant; instead, as the Senate Committee found, forfeiture of the proceeds of

a crime is simply a business cost of avoiding prosecution, leaving the defendant no worse off than before he engaged in criminal activity, but far better off than if in prison.

Case law, while applying no iron-clad rule, supports the Court's conclusion. In *United States v. Schneider*, No. 07-10234-01-02-MLB, 2009 WL 1269587, at *6 (D. Kan. May 7, 2009), a district court in Kansas offered as one reason it rejected the Government's reasons for refusing to allow three individuals to post a cash deposit to secure the defendant's pre-trial release, the fact that "there [was] no allegation or evidence that the funds used by any of the three individuals for the deposit were illegally obtained or were derived from illegal activity." Likewise, in *Kaila*, a district court in Washington satisfied itself, through an *in camera Nebbia* hearing, that "the funds utilized by the Defendant for bail [were] from legitimate sources," prior to determining that the defendant should remain released on bond. 2008 WL 1767728, at *1.

The district court's language in *Ellis DeMarchena* is even more compelling:

> [T]he mere proffering of a corporation surety bond in the amount set as bail does not deprive the court of the right to inquire into areas which might bear on the question of whether the defendant will make future court appearances if released on the bond. The court has the right and the duty to satisfy itself that there is more than just a financial assurance that a bailed defendant will appear in court when required. Thus, when a corporate surety bond is tendered for acceptance, the court has the right to ask the surety to whom they will look in the event of a forfeiture. The source of the security providing the collateral for the bond can provide valuable information regarding the motivation for a defendant to appear. If the bond were secured by the property of defendant's relatives, or close friends, the court could, logically, conclude that the possibility of financial harm to those individuals might motivate a defendant to appear. *On the other hand, if the security comes from an illegitimate source, and is merely a 'business' expense for a dealer in contraband, there is a paucity of moral force compelling a defendant to reappear. Indeed, such a source would be more consistent with a possible fulfillment of a pledge to a defendant of purchased freedom if caught*.

330 F. Supp. at 1226 (S.D. Cal. 1971) (emphasis added).

The Court finds that Sharma has not established–and admittedly cannot establish–that the Saint Clair Shores real estate, because of its source, will reasonably assure his appearance at trial. Thus, it declines to accept an agreement to forfeit that property as a release condition. 18 U.S.C. § 3142(g)(4) ("[T]he judicial officer . . . shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.").

In lieu of an agreement to forfeit the Saint Clair Shores real estate, the Court will increase the amount of Sharma's bond from $200,000 to $400,000. The Court also clarifies for the record that Defendant's bond may be in the form of cash or corporate surety. Defendant must make a *Nebbia* showing regarding the source of the $400,000 bond and the money used to purchase his brother's residence.

**IV.     CONCLUSION**

On **Thursday, June 7, 2012 at 9:00 am**, the Court will hold an *in camera*, *ex parte* hearing on the record. Then, Sharma has the burden to show that the money and property used to secure his pre-trial release have legitimate sources. With respect to the $400,000 cash or corporate surety bond, Defendant must establish the legitimacy of the funds used to pay the premium charged by the bondsman, as well as any collateral he will use to secure the bond.

Sharma must provide the Court with supporting documents and affidavits no later than **5:00 pm on Thursday, May 31, 2012**. The Court requires the following documentation:

(1) An affidavit setting out the names of all persons and/or organizations which will contribute any assets and/or funds toward the collateral and/or premium for the bond, and an identification of any relationship (*i.e.*, friend, family, church, etc.) that the person and/or organization has with Sharma must be provided.

(2) An affidavit setting forth the nature of each contribution, its amount (or value) (*i.e.*, $20,000 cashier's check; residence valued at $300,000) and the identity of the person/organization making the contribution.

(3) If the contribution will be by cash, the person or organization that will provide the cash must submit an affidavit stating its source. If the source of the cash is a personal or organizational bank account, the person or organization must submit a copy of the bank statement for the account from which the money will be withdrawn and must include in the affidavit a statement of the source of the funds in the account. If the source of the cash is another person(s), that person(s) must submit an affidavit(s) stating its source.

(4) If the contribution will be by a check drawn on the account of an individual or organization, a copy of the bank statement for the account on which the check will be drawn must be provided. In addition, the person or organization providing the check must submit an affidavit stating the source of the funds in the account on which the check will be drawn, along with supporting documentation if available.

(5) If the contribution will be by money order or other such financial instrument, a copy of the money order or financial instrument must be provided. In addition, the person or organization that provides the money order or other financial instrument must submit an affidavit stating the source of the funds used to acquire the financial instrument, along with supporting documentation if available.

After the Court reviews this information *in camera*, the Court will decide what -- if any -- additional evidence will be required at the hearing and will notify counsel as soon as practicable prior to the hearing.

**IT IS ORDERED.**

        /s/ Victoria A. Roberts
        Victoria A. Roberts
        United States District Judge

Dated: May 25, 2012

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 25, 2012.<br><br>S/Linda Vertriest<br>Deputy Clerk |